IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**THOMAS NAVARETTE,**
an individual,

      **Plaintiff,**

vs.                                     No. CIV-03-0638 JC/WDS

**CITY OF ALBUQUERQUE,**
a local public governing body of the
State of New Mexico, **GLENN STOUT,**
In his individual and official capacity,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment Requesting Dismissal of Counts I, III, IV, VI and VII of Plaintiff's Complaint, filed May 20, 2004 (*Doc. 28*). Having reviewed the motion, memoranda, responses thereto, and the relevant authority, the Court finds the motion well-taken and it is, therefore, granted.

**I.**     **Background**

Plaintiff filed his Amended Complaint on June 23, 2003 asserting claims for unreasonable seizure (Count I), excessive force (Count III), malicious prosecution (Count IV), racial profiling (Count V), state claims under the New Mexico Tort Claims Act (Count VI) and punitive damages (Count VII) against Defendant Officer Stout in both his individual and official capacities as well as the City of Albuquerque, both directly and in respondeat superior for the acts of Stout. Counts II and V of Plaintiff's Amended Complaint (direct claims against the City) have been dismissed pursuant to Defendants' prior unopposed Motion for Summary Judgment.

The uncontested facts giving rise to Plaintiff's remaining claims are as follows. On May 26,

2001, Officer Stout of the Albuquerque Police Department was participating in a law enforcement program called "The Montgomery Tactical Plan", (" Tact Plan"). The purpose of the Tact Plan as set out in the operating manual was to reduce traffic congestion, deter criminal activity and loitering in parking lots adjacent to Montgomery Blvd. The hours of operation of the Plan were from 2100 hours to 0200 hours. The location was Montgomery Boulevard between San Mateo Boulevard and Tramway Boulevard, to include all bordering business, establishments, and parking lots. The target group was teenagers and young adults loitering in parking lots bordering Montgomery. The Tact Plan called for strict enforcement, including "arrest of any individual who is in possession of a vehicle while loitering in a parking lot" and towing of the vehicle. It also provided that arrested juveniles should be detained and their parents contacted to come to the scene to retrieve their children. It also provided that juveniles should be arrested for repeat offenses.

La Mirada Square, ("the Square") is located on Montgomery Boulevard, near Wyoming, and is within the location set out in the Tact Plan. The incident occurred within the enforcement hours when businesses in the Square were closed. The Square parking lot was posted with "No Trespassing" signs. Officers Stout and Wood were working the Tact Plan, citing and/or arresting individuals in the parking lot of the Square. In order to transport one of the individuals to jail, Stout was traveling, via bicycle, back to his police car when he noticed two vehicles, also parked in the Square lot, one of which contained the Plaintiff as a passenger. Plaintiff admits that he entered the parking lot for the sole purpose of socializing with the two female occupants of the second vehicle. Stout approached the two vehicles and ordered the occupants of both vehicles to leave the parking lot. The vehicle with the two females left immediately with no occupant being cited or arrested. There is some dispute between Stout and Plaintiff regarding the length of time it took Plaintiff and the driver

2

to exit the parking lot, but taking the facts most favorable to the Plaintiff, "he told the girls to leave, so they did, and he asked us to leave, so we were about to leave. The car was nudging away, and I guess he said I was smiling at him, thinking it was sarcastic, so he told me to get out of the car, that I was under arrest. So he opened the door and kind of pulled me out." Plaintiff's Deposition, at 24:1-6.

Stout then took enforcement action against Plaintiff and the driver. The driver was cited and Plaintiff was arrested. Plaintiff was then handcuffed and transported to the Bernalillo County Juvenile Detention Center, where he was picked up by his mother. He attended a class on criminal trespass in lieu of being prosecuted for that offense. Plaintiff alleges that this arrest and required attendance at the class constituted an unreasonable seizure and malicious prosecution.

Plaintiff alleges that the real target group of the Tact Plan was young Hispanic males and that he was targeted because he was a young Hispanic male, in violation of his equal protection rights under the Constitution. However, Plaintiff has stated under oath that he has no evidence that he was arrested because of his ethnic origin. Rather, he speculated that Stout arrested him because he was smiling at Stout and he may have felt he was smiling sarcastically. Plaintiff's Deposition, at 24:1-6.

There is no other substantive evidence in the case that would support a finding that Plaintiff was targeted or arrested because of his ethnic origin. Stout and his partner took enforcement action against forty-one individuals on the evening in question. Thirty-nine were cited and two were arrested for criminal trespass. Of the forty-one, eleven were designated as Hispanic males. Plaintiff was the only Hispanic male arrested. The only other individual arrested was a non-Hispanic female.

Plaintiff by his own testimony has no substantive evidence that the City or Stout or the Tact Plan targeted young Hispanic males. To the contrary, there is evidence in the case that the two

3

individuals arrested by Stout on the night in question were both engaging in some kind of negative behavior during the interaction with Stout - i.e., smiling sarcastically or talking back to Stout - that may have had some influence on the officer's decision to arrest them rather than cite them as he had the other thirty-nine. There is simply no evidence to support Plaintiff's bald assertion that he was targeted because of his Hispanic ethnicity.

Plaintiff also asserts a claim of unconstitutional use of excessive force arising from Stout's use of "too tight" handcuffs. After he was arrested, Plaintiff was handcuffed with his hands behind his back pursuant to policy and procedure of the Albuquerque Police Department. Plaintiff alleges that he asked Stout to loosen the handcuffs because they were causing him pain and Stout refused. Stout claims he did not. Taking the testimony most favorable to the Plaintiff, after Plaintiff was arrested and placed in handcuffs, Stout proceeded to the driver side of the vehicle and wrote out a citation for the driver. While Stout was writing out the citation, Plaintiff asked Stout to "loosen up my handcuffs, because he put them on pretty tight." Stout's response was "deal with it." The driver of the vehicle also asked Stout to loosen the handcuffs and Stout responded "Shut-up or else I am going to arrest you too." It is undisputed that approximately fifteen minutes after his arrest Stout's partner loosened the cuffs.

**II.     Legal Standard**

For the Plaintiff to survive summary judgment, the record must contain facts that rebut the defendants' presumption of an entitlement to qualified immunity. See *Medina v. Cram,* 252 F.3d 1124, 1130 (10th Cir. 2001)   Qualified immunity protects "government officials performing discretionary functions... from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have

4

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Once a defendant raises the qualified immunity defense, then the plaintiff has the burden "to show both that the defendant's alleged conduct violated the law and that the law was 'clearly established' when the alleged conduct occurred." *Pueblo Neighbourhood Health Ctrs, Inc. v Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).  "In meeting this burden, a plaintiff must do more than identify in the abstract a 'clearly established' right and allege that a defendant has violated that right." *Id* at 645.  If a plaintiff meets this two-part burden then the burden shifts to the defendant to show that there are no genuine issues of material fact which will defeat the claim for qualified immunity. *Woodward v. City of Worland,* 977 F.2d 1392, 1396-97 (10th Cir. 1992)

"A necessary concomitant to the determination of whether the constitutional right is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Seigert v. Gilley,* 500 U.S. 226, 232 (1991); See also *Bella v. Chamberlain*, 24 F.3d 1251 (10th Cir. 1994)  "For a right to be 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)  In addition, the Tenth Circuit has held that for the law to be "clearly established"  there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Garramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996).  Moreover, the "clearly established" inquiry " must be undertaken in light of the specific context of the case, not as  a broad general proposition." *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001).

### III.     Discussion- Federal Claims

A.      *Unlawful Seizure and Equal Protection*

Stout is entitled to qualified immunity because he observed Plaintiff trespassing on private property, and therefore had probable cause to arrest him. He also did not arrest him for an unconstitutional improper purpose. A police officer can arrest a person, without a warrant, if the officer has probable cause to believe that a person committed a crime. *Tennessee v. Garner*, 471 U.S. 1 (1985). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that an arrestee has committed or is committing an offense." *Albright v. Rodriquez,* 51 F.3d 1531, 1536 (10th Cir. 1995) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476) (10th Cir. 1995) "When a warrantless arrest is the subject of a 1993 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero*, 45 F.3d 1472, 1476  The court in examining the officer's conduct under a Fourth Amendment challenge for an unreasonable seizure applies the "objective reasonableness" standard to the officer's conduct. *Dixon v. Richer*, 922 F2d. 1456 (10th Cir.1991)

In this case, the posted "No Trespassing" signs in the Square lot warned persons that the parking lot was for "Customer Parking Only" and that "[a]nyone entering, loitering or parking... without conducting shopping center business shall be deemed to have trespassed...." The signs also cited the applicable ordinance and the potential punishment for a criminal trespass violation.

Stout, while enforcing the Tact Plan along Montgomery Boulevard, observed Plaintiff in a targeted area. Plaintiff admits he was not in the shopping center parking lot for a business purpose. The Tact Plan called for strict enforcement of the traffic and "no trespassing" laws in the targeted area. Therefore, Stout knew at the time he initially observed Plaintiff that he was committing criminal

6

trespass. A criminal trespassing offense under Albuquerque ordinance is a misdemeanor. Therefore, Stout saw the Plaintiff commit a misdemeanor in his presence.

The Tact Plan required strict enforcement of criminal laws such as criminal trespass, but because Stout was on his way to transport an individual to jail, he ordered Plaintiff, his driver and the two girls to leave the lot. The two girls immediately left and were not cited or arrested. Plaintiff and Marquart remained for some extended time after the girls left and Plaintiff engaged in some interaction with Stout that resulted in Stout deciding to take enforcement action against Plaintiff and Marquart for criminal trespass.

Stout cited the driver for criminal trespass and the car was not towed. He arrested Plaintiff even though he was a juvenile at the time. Stout testified that he took a different enforcement action against Plaintiff, based on Plaintiff's demeanor, which caused him concern that Plaintiff would return to the area and continue to violate the criminal trespass law if he was merely cited. Even if Stout had not reasonably believed that this return was probable or "of concern" and he arrested Plaintiff after he started smiling at him, it does not change the determination that Plaintiff was still engaged in a criminal trespass and Stout had probable cause to arrest him for this offense. See *Atwater v. City of Lago*, 532 U.S. 318, 354 (2001). (If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.)

Plaintiff claims that he was the victim of "racial profiling" by Stout. However, Plaintiff has failed to come forward with any competent summary judgment evidence beyond mere speculation or conjecture that he was targeted because he was an Hispanic male. Plaintiff admits that he has no evidence to support a claim of racial profiling. Plaintiff's Deposition, at 86-87:18-25,1-17.

7

An equal protection claim premised upon allegations of racial profiling requires a plaintiff to prove that the actions of the defendants had a discriminatory effect and were motivated by a discriminatory purpose. *Bradley v. United States*, 299 F.3d 197, 205 (3rd Cir. 2002). To prove discriminatory effect, plaintiff has the burden of showing that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class. *Id* at 206. Plaintiff has failed to produce evidence beyond mere speculation or conjecture to support his claim of racial profiling and absent a violation of Plaintiff's constitutional rights, Stout is entitled to qualified immunity as to this claim.

B.   *Excessive Force*

Plaintiff alleges he suffered numbness and pain in his wrists as a result of Stout's failure to loosen the "too tight" cuffs within two minutes of their application. Plaintiff further asserts that Stout's act of leaving them on "too tight" for fifteen minutes constituted the use of excessive force amounting to a Fourth Amendment violation.

Plaintiff has minor or no residual injury to his wrists, he did not miss work as a result of the alleged injury and he was not precluded from doing tasks required of him at work as a result of his injury. Plaintiff's Deposition, at 65-76

In *Hannula v. Lakewood*, 907 F.2d 129 (10th Cir. 1990), the Tenth Circuit held that where a police officer was entitled to qualified immunity in making a valid probable cause arrest, his failure to loosen tight handcuffs did not rise to a clearly established substantive due process violation. In *Hannula,* the court held:

> The cited decisions establish that while loosening tight handcuffs may be the most compassionate action, the failure to do so does not arise to a clearly established constitutional violation. *Alm v. Moreth*, 694 F.Supp.1322, 1324 (N.D. III.1988)

> (no constitutional violation where the plaintiff repeatedly stated that handcuffs were injuring him but handcuffs were not applied in an abnormal manner such as to cause bleeding); *Taylor v. Kveton*, 684 F.Supp.179, 183 n.6 (N.D. III.1988) (there is only an "arguable" duty to rectify handcuffs that are three notches too tight); *Van Houten v. Baughman,* 663 F.Supp.887, 891 (C.D. III.1987) (numbness in wrists arising from handcuffing does not arise to the level of severity as to shock the conscience of the court). The cases do not "clearly establish" that handcuffing a detainee too tightly constitutes excessive force, at least in the absence of apparent physical damage to the plaintiff's wrists.

*Hannula v. Lakewood*, 907 F.2d 129 at 132.

In a subsequent, similar case, the Tenth Circuit adopted the Fourth Amendment "objective reasonableness" standard applied in *Graham v. Connor*, 490 U.S. 386 (1989) to examine alleged excessive force. *Ford v. Gruwell,* 961 F.2d 219 (10th Cir.1992). Ford contended that in the course of his arrest the officer had applied the handcuffs too tightly and they had scraped his wrists, drawing blood. The court determined first that the officer had the right to arrest Ford, which included the right to have him handcuffed. It then held that where the officer was making a lawful arrest, a failure to loosen tight handcuffs, which caused him pain and minimal injury, was not excessive force.

Plaintiff has failed to meet his burden of coming forward with substantive, summary judgment evidence on the claim for the use of excessive force, sufficient to defeat Stout's qualified immunity defense and his claim based on this allegation is dismissed.

C.   *Malicious Prosecution*

For the Plaintiff to prevail on a malicious prosecution claim under Section 1983, he must establish that his rights were violated under the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266 (1994). In addition he must also prove that probable cause was lacking for his arrest. *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). Plaintiff has failed to do either and therefore

9

his claim for malicious prosecution must also fail. Defendant is entitled to a dismissal of Plaintiff's malicious prosecution claim on qualified immunity grounds.

### III. STATE CLAIMS

Tort liability of a governmental entity and its employees is limited by the specific provisions set out under the New Mexico Tort Claims Act ("NMTCA") *Pemberton v. Cordova*, 105 N.M. 476, 477, 734 P.2d 254, 255 (Ct. App. 1987). The NMTCA provides governmental entities and public employees with immunity from tort suits absent a specific waiver of that immunity set forth under the act. *Weinstein v. City of Santa Fe*, 121 N.M. 646, 649, 916 P.2d 1333 (Ct. App. 1989). Any provision purporting to waive governmental immunity must be strictly construed. *Armijo v. Department of Health and Environment*, 108 N.M. 616, 755 P2d 1333 (Ct. App. 1989).

Section 41-4-12 of the NMTCA sets forth the specific torts for which immunity has been waived for law enforcement officers. This section waives immunity for various torts, usually intentional torts, "caused by law enforcement officers while acting within the scope of their duties." *Bober v. New Mexico State Fair,* 111 N.M. 644, 653, 808 P.2d 614 (1991).

This court has already determined as a matter of law that the undisputed substantive evidence is that Stout had probable cause to arrest the Plaintiff; that Plaintiff was not arrested because he fell within a protected class; and that Stout did not use excessive force by the "too tight" application of handcuffs during the arrest. Therefore the Plaintiff's state claim, under the NMTCA, set out in Count IV of Plaintiff's Complaint, premised on allegations of assault, battery, malicious abuse of process, false arrest, and/or false imprisonment, fails as a matter of law and is hereby dismissed.

## IV. PUNITIVE DAMAGES

As a matter of law, Plaintiff's claim for punitive damages must also fail because he has produced no substantive evidence on his underlying claims for compensatory or nominal damages. *Sanchez v. Clayton,* 117 N.M. 761, 767, 877 P.2d 567, 673 (1994); See also *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138 (10th Cir.2000).

## V. Conclusion

In summary, Plaintiff has produced no competent summary judgment evidence sufficient to defeat Officer Stout's defense of qualified immunity.

Wherefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment Requesting Dismissal of Counts I, III, IV, VI and VII of Plaintiff's Complaint (*Doc. 28*). is GRANTED.

Dated August 11, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

> James C. Ellis
> 118 Wellesley Dr. S.E.
> Albuquerque, New Mexico 87106

Counsel for Defendant:

> Beatrice J. Brickhouse
> Assistant City Attorney
> P.O. Box 2248
> Albuquerque, New Mexico 87103